IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BONNIE MANASKIE, on behalf of herself and all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>ENTRATA, INC. d/b/a RESIDENT VERIFY and RESIDENT VERIFY, LLC,<br><br>    *Defendant*. | COMPLAINT – CLASS ACTION<br><br>CIVIL ACTION NO.<br><br>_____<br><br>JURY TRIAL DEMANDED |

## I.    PRELIMINARY STATEMENT

1. This is a consumer class action brought for willful violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), against Entrata d/b/a Resident Verify ("Entrata") and Resident Verify, LLC ("RV, LLC") (collectively, "Resident Verify" or "Defendants"), which work jointly to operate a consumer reporting agency ("CRA").

2. Resident Verify is a consumer reporting agency. It sells tenant screening consumer reports about prospective residential tenants. These reports contain information about consumers' credit and financial history, rental and eviction information, criminal and arrest records, employment history, bankruptcy information, and other personal information.

1

3. The Fair Credit Reporting Act ("FCRA") regulates Resident Verify's sale of consumer reports, including obligations to ensure the accuracy of the information it sells, and the requirements to reinvestigate information when it receives a consumer dispute.

4. At issue in this lawsuit are Resident Verify's procedures – or lack thereof – for responding to consumer disputes of identity theft.

5. When Congress enacted the FCRA it created numerous protections for consumers who are the victims of identity theft. These include requirements that CRAs like Entrata reinvestigate information disputed as fraudulent, notify the sources of disputed fraudulent information for correction, and send required notices to consumers. These obligations are contained in Sections 1681i of the FCRA.

6. When Resident Verify receives a dispute of identity theft from a consumer it does none of these things. Instead, it provides a template response stating it will not reinvestigate disputes of identity theft and suggests that the consumer contact the source of the disputed information directly.

7. This is a cost savings mechanism for Resident Verify. Rather than comply with the FCRA's reinvestigation and notice requirements for identity theft victims, Resident Verify tells consumers to, in essence, deal with it themselves.

8. Resident Verify has willfully violated the requirements of Sections 1681i of the FCRA by refusing to take any of the required steps to assist victims of identity theft.

## II. JURISDICTION AND VENUE

9. The Court has federal question jurisdiction pursuant to the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Resident Verify regularly sells its products and services in this District.

## III. PARTIES

11. Plaintiff Bonnie Manaskie is a resident of this division and district, and she is a consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

12. Defendant Entrata is a Delaware corporation that regularly conducts substantial business in the State of Georgia, and which has its principal place of business in Lehi, Utah.

13. Defendant RV, LLC is a wholly-owned subsidiary of Entrata that regularly conducts substantial business in the State of Georgia, and which has a principal place of business in Lehi, Utah.

14. Entrata and RV, LLC functions as a single, unified CRA as defined by the FCRA, 15 U.S.C. § 1681a(f), having integrated their ownership, operations, data storage, technical support, information technology services, marketing, quality assurance, auditing, compliance, consumer contact personnel, and oversight efforts.

## IV. FACTUAL ALLEGATIONS

**Defendant's Obligations To Assist Victims of Identity Theft**

15. More than 23.9 million persons – 9% of all adult Americans – are

3

victims of identity theft each year.[1]

16. The consequences of identity theft can be devastating to consumers and businesses, including significant loss of both money and time.

17. When Congress enacted the FCRA it created a dispute mechanism through which victims of identity theft could notify consumer reporting agencies of fraudulent accounts, and help victims clear their records of any identity-theft related information. *See* 15 U.S.C. § 1681i(a).

18. Section 1681i(a) allows consumers to submit disputes to CRAs regarding the accuracy or completeness of any information in their file. Upon receipt of the dispute, the FCRA requires that the CRA conduct a reasonable reinvestigation of any information that is disputed by a consumer to determine if the information is accurate. The CRA must notify the source of the disputed information about the consumer's dispute. The CRA must provide the source with all relevant information received from the consumer. The CRA must review and consider all relevant information provided by the consumer in conducting its reinvestigation. The CRA must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified. The CRA must complete the reinvestigation within 30 days, and send the consumer the written results of its reinvestigation and a consumer report that is based on the consumer's file as that file is revised as a result of the

---

[1] Victims of Identity Theft, 2021, U.S. Dept. of Justices, Bureau of Justice Statistics. October 2023, NCJ Number 306474.

reinvestigation. 15 U.S.C. § 1681i(a).

19. Alternatively, if a CRA is a "Reseller", as defined by Section 1681a(u) of the FCRA, then its reinvestigation obligations differ. A "Reseller" is a CRA that purchases and then resells consumers' files from other CRAs and does not maintain its own independent database. 15 U.S.C. § 1681a(u).

20. When a Reseller CRA receives consumer disputes of identity theft, it must determine within five days whether it is responsible for the disputed inaccuracy. 15 U.S.C. § 1681i(f)(2). If the Reseller CRA determines that the information is inaccurate as a result of its own act or omission, then it must correct or delete the information within twenty days. 15 U.S.C. § 1681i(f)(2)(B)(i). If, however, the reseller determines that the alleged inaccuracy is not the result of its own act or omission, then it must notify the CRA that provided the information to the reseller. 15 U.S.C. § 1681i(f)(2)(B)(ii). Once notified by the reseller, the upstream CRA must reinvestigate the alleged inaccuracy and report the results of its reinvestigation to the reseller, who must then send those dispute results to the consumer. 15 U.S.C. § 1681i(a)(1)(A), 1681i(f)(3).

21. Resident Verify does not engage in any of the steps required by Section 1681i(a) when it receives a consumer dispute of identity theft. It does not reinvestigate the disputed information. It does not notify the source about the consumer's dispute. It does not provide the source with all the relevant information about the dispute. And it does not delete the information.

22. And to the extent Resident Verify believes it is a Reseller, it does not engage in any of the reinvestigation requirements imposed by Section 1681i(f). It does not analyze the consumer's dispute to determine if the alleged identity theft is the result of an error or omission of its own. It does not notify the upstream CRA from whom it obtained the disputed information that the consumer has filed a dispute of identity theft, and, in turn, it does not then provide the consumer with the results of the upstream CRA's reinvestigation.

23. Rather than engage in any of the reinvestigation requirements of Section 1681i(a), when Resident Verify receives an identity theft dispute from a consumer, it tells the consumer that it is unable to dispute identity theft on the consumer's behalf, sends them a document called "Summary of Rights for Remedying the Effects of Identity Theft", and tells them to contact the upstream CRA directly.

24. Resident Verify's failure to comply with the requirements of the FCRA exacts serious consequences on consumers, including continued reporting of inaccurate information, deprivation of statutorily mandated information regarding the steps taken to investigate the dispute, lost time and resources expended in submitting ignored disputes, and emotional distress.

**Plaintiff's Experience with Resident Verify**

25. In March of 2024, Plaintiff applied to rent an apartment from Cottages at 76, located at 37 Bynum Road, Clayton, Georgia 30525.

26. In connection with her application, Cottages at 76 obtained a consumer report concerning Plaintiff from Resident Verify.

27. On or about March 14, 2024, Cottages at 76 notified Plaintiff that it had denied her lease application based on the consumer report it received from Resident Verify.

28. Shortly thereafter, Plaintiff obtained a copy of the consumer report that Resident Verify furnished to Cottages at 76.

29. Plaintiff discovered in the consumer report that Resident Verify reported an eviction as belonging to her.

30. Specifically, Resident Verify reported that it found an eviction in the Broward North Courthouse in Florida that had been filed by Miramar Operating Lessee LLC on May 9, 2019.

31. The eviction information did not belong to Ms. Manaskie. Ms. Manaskie has never lived in Florida, and she was living in Athens, Georgia in 2019.

32. Resident Verify should have known that the eviction information did not belong to Ms. Manaskie. The Broward County Court eviction record contains the name "Bonnie Manaskie", but it has no other personally identifying information. It contains no birthday, middle name, social security number or other identifying information. It is also located in a jurisdiction in which Ms. Manaskie has never lived, and the lease attached to the eviction complaint contains only an automated signature.

33. Resident Verify reported the eviction record on Ms. Manaskie's consumer report based on nothing more than a match of her first and last names.

34. The eviction information was the result of identity theft, and Ms. Manaskie had filed an identity theft police when she first learned about the identity theft.

35. The identity theft police report states, among other things, that Ms. Manaskie reported the identity theft and "stated she has never lived in Miramar, Fl., nor does she know any one there."

36. Indeed, Resident Verify's own report concerning Plaintiff shows a Fraud Alert and Consumer Statement indicating that she has been the victim of identity theft.

37. On April 12, 2024, Ms. Manaskie filed a dispute with Resident Verify through email. In her dispute, Ms. Manaskie told Defendant:

> This is my second dispute of the inaccurate information you are reporting about me. You recently ran a background check on me for Cottages at 76 (reference number 18127791), and you reported that I have an eviction from Miramar Operating Lessee in Broward County, Florida in 2019. This is false. I have no evictions on my record, and I've never lived in that apartment complex or in Broward County, Florida. I was living in Athens, Georgia in 2019, and I had lived there for a few years before and after that. I think this might be identity theft. I was the victim of identity theft over the last few years, for which I filed a police report, and I think this may have been identity theft as well. I am attaching a copy of that police report. Please correct this error asap, as it is causing me significant trouble in finding a place to live. Thank you.

8

38. Ms. Manaskie emailed a copy of the identity theft police report to Resident Verify, along with her dispute.

39. Resident Verify received Ms. Manaskie's dispute and the identity theft police report.

40. Resident Verify assigned Ms. Manaskie's dispute a dispute number: 18127791.

41. Five days later, Resident Verify responded to Ms. Manaskie's dispute with a form response: "Thank you for contacting Resident Verify, LLC regarding your suspected identity theft.  We are unable to dispute identity theft on your behalf. We have attached a copy of the Summary of Rights for 'Remedying the Effects of Identity Theft' to this email. We also suggest that you contact Experian directly for further information at www.experian.com or 1-800-493-1058."

42. Resident Verify did not reinvestigate the disputed information.

43. Resident Verify did not notify the source about Ms. Manaskie's dispute.

44. Resident Verify did not provide the source with all the relevant information about Ms. Manaskie's dispute.

45. Resident Verify did not delete or block the inaccurate information.

46. Resident Verify did not correct or delete the disputed information within twenty days of receiving the dispute.

47. Resident Verify did not notify the CRA that provided the disputed information to Defendant so that the upstream CRA could reinvestigate the disputed

information.

48. Ms. Manaskie responded to Resident Verify's refusal to investigate the inaccurate information: "Thank you for responding, but I don't understand. I am telling you that the information you reported is inaccurate, and you need to correct it. Can you at least tell me the source of the eviction information-was it from Experian or was it from somewhere else?"

49. Resident Verify again responded to Ms. Manaskie with a form response: "Thank you for contacting Resident Verify. If needed, please contact our office at your earliest convenience to discuss your consumer report. We can be reached at 1-866-698-0661."

50. Again, Resident Verify did not reinvestigate the disputed information.

51. Again, Resident Verify did not notify the source about Ms. Manaskie's dispute.

52. Again, Resident Verify did not provide the source with all the relevant information about Ms. Manaskie's dispute.

53. Again, Resident Verify did not delete or block the inaccurate information.

54. Again, Resident Verify did not correct or delete the disputed information within twenty days of receiving the dispute.

55. Again, Resident Verify did not notify the CRA that provided the disputed information to Defendant so that the upstream CRA could reinvestigate the

disputed information.

56. As a direct and proximate result of Defendants' refusal to reinvestigate her disputes, Ms. Manaskie suffered, without limitation, the following injuries:

    A. The continued presence of the inaccurate identity theft information on her consumer report;

    B. Deprivation of the information that Resident Verify had not reinvestigated her dispute or contacted the source of the information which, at a minimum, would have armed her with additional information concerning her credit worthiness;

    C. Distress from getting the run around from Resident Verify concerning her disputes and what Resident Verify would actually do to investigate them; and

    D. Lost time and resources expended in association with making multiple ignored disputes of the inaccurate identity theft information to Resident Verify.

## V.    CLASS ACTION ALLEGATIONS

57. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of the following class initially defined as follows (the "Class"):

> All persons residing in the United States and its Territories who sent a communication to Defendant(s), which Defendant(s) treated as a dispute, and to whom Defendant(s) sent a response similar in form and content to the letter attached as Exhibit A, during the period beginning two years prior to the filing of this action and through the time of

judgment.

58. Plaintiff reserves the right to amend the above definitions based upon developments in discovery or as otherwise appropriate and permitted.

59. The class is so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to Defendants, Plaintiff avers upon information and belief that they minimally number in the thousands.

60. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The principal questions are whether Defendants violated the FCRA by failing to reinvestigate and contact the source of the disputed information, or delete it; whether the violations were negligent, willful, or reckless; and whether members of the classes and subclass are entitled to statutory damages, actual and/or punitive damages, and in what amounts.

61. Plaintiff's claims are typical of the claims of the class, which all arise from the same operative facts and are based on the same legal theories.

62. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling class actions and claims under the FCRA. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue these claims.

63. This action should be maintained as a class action because questions of law and fact common to class members predominate over any questions affecting only individual class members, and because a class action is a superior method for the fair and efficient adjudication of this controversy. Defendants' conduct described in this Complaint stems from standard policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Resident Verify's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

64. This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the party opposing the class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of class members not parties to the adjudications or substantially impair or impede their ability to protect their rights.

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*On Behalf of Plaintiff and the Class for Defendants' Violations of FCRA §§ 1681i*

65. Plaintiff realleges and incorporates the foregoing paragraphs.

66. Defendant received notice from Plaintiff that she disputed the accuracy of identity theft information on her consumer report from Defendants.

67. Defendants willfully and negligently violated Section 1681i(a) by failing to: (a) reinvestigate the disputed information; (b) notify the source of the disputed information about Plaintiff's dispute; or (c) delete the disputed information.

68. Alternatively, to the extent Resident Verify is determined to be a Reseller, as defined by 15 U.S.C. § 1681a(u), it violated Section 1681i(f) by failing to: (a) correct or delete the disputed information within twenty days of receiving the dispute; or (b) notify the CRA that provided the disputed information to Defendants so that the upstream CRA could reinvestigate the disputed information.

69. Pursuant to FCRA sections 1681n and 1618o, Defendants are liable to Plaintiff and all class members for its failure to comply with FCRA sections 1681i(a)(1) and (2) in an amount equal to the sum of (1) statutory damages of up to $1,000 per violation, (2) punitive damages in an amount to be determined by the jury, (3) actual damages in an amount to be determined by the jury, (4) attorney's fees, and (5) costs.

### SECOND CLAIM FOR RELIEF

*On Behalf of Plaintiff for Defendants' Violations of FCRA § 1681e(b)*

70. Plaintiff realleges and incorporates the foregoing paragraphs.

71. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports furnished regarding Plaintiff.

72. Resident Verify reported information that it had reason to know was inaccurate.

73. Resident Verify knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

74. Resident Verify obtained or had available substantial written materials that apprised it of its duties under the FCRA.

75. Despite knowing of these legal obligations, Defendants acted consciously in breaching known duties and deprived Plaintiff of her rights under the FCRA.

76. As a result of these violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered, and continues to suffer, actual damages, denial of housing, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

77. The violations by Defendants were willful, rendering them liable for

punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

78. Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## VII. <u>JURY TRIAL DEMAND</u>

79. Plaintiff demands a jury trial on all claims.

## VIII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, with respect to her First Claim for Relief, Plaintiff prays for judgment against Defendants as follows:

a. An order certifying the proposed class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the class;

b. An order declaring that Defendants' actions are in violation of the FCRA;

c. Statutory damages in the amount of not less than $100 and not more than $1,000 per violation per class member, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

d. Actual damages in an amount to be determined by the jury, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

  e. Punitive damages to be determined by the jury, pursuant to 15 U.S.C. § 1681n(a)(2);

  f. Attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(b); and

  g. Such other relief as may be just and proper.

WHEREFORE, with respect to her Second Claim for Relief, Plaintiff prays for judgment against Defendants as follows:

  a. Actual damages in an amount to be determined by the jury, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

  b. Punitive damages to be determined by the jury, pursuant to 15 U.S.C. § 1681n(a)(2);

  c. Attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(b); and

  d. Such other relief as may be just and proper..

DATED: February 12, 2025    Respectfully submitted,

      By: /s/ Jeffrey B Sand
       Jeffrey B. Sand
       Georgia Bar No. 181568
       Andrew L. Weiner
       Georgia Bar No. 808278
       WEINER & SAND LLC
       800 Battery Avenue SE
       Suite 100
       Atlanta, GA 30339

(404) 254-0842 (Tel.)
(866) 800-1482 (Fax)
js@wsjustice.com
aw@wsjustice.com

James A. Francis*
Lauren KW Brennan*
FRANCIS & MAILMAN, P.C.
1600 Market Street Suite 2510
Philadelphia, PA 19103
T: 215-735-8600
F: 215-940-8000
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Pro hac vice *applications forthcoming

*Attorneys for Plaintiff*